IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

FILED
U.S. DISTRICT COURT
2009 JAN -8 PM 2: 29
CLERK_____
SO. DIST. OF GA.

AUGUSTA DIVISION

| | | |
|---|---|---|
| SHELDON ANTHONY CROSS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 107-125 |
| | ) | (Formerly CR 103-089) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner has filed with this Court a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The United States of America ("the government") has filed its opposition to the motion and has requested that the motion be dismissed. (Doc. no. 4). Petitioner filed his opposition to the government's response. (Doc. no. 5). For the following reasons, the Court **REPORTS** and **RECOMMENDS** that Petitioner's § 2255 motion be **DENIED** without an evidentiary hearing, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the government.

## I. DISCUSSION

### A.    Background

In 2003, a federal grand jury indicted Petitioner, along with six other individuals, in an 18-count indictment containing allegations of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and producing fraudulent identification documents, in violation of 18 U.S.C. § 1028. United States v. Wright, CR 103-064 (S.D. Ga. Sept. 11, 2003),

*(hereinafter* "CR 103-064"), doc. no. 16. At the time of the return of the indictment, Petitioner was identified as Walter Goins, aka Jesus Jose Saravia. Id. Following arraignment, the government filed a motion to take Petitioner's fingerprints, (id., doc. no. 33), and upon taking those fingerprints, the government learned Petitioner's true identity, discovered his prior criminal history, and learned that he had been deported in 1999.[1] The government then amended the indictment to include Petitioner's correct identity. Id., doc. nos. 70, 78.

On January 9, 2004, Petitioner appeared before the Honorable Dudley H. Bowen, Jr., United States District Judge, and, pursuant to a plea agreement (the "Agreement"), pleaded guilty to count one of the multi-defendant indictment in CR 103-064, the conspiracy charge, and pleaded guilty to an information charging him with a single count of illegal re-entry after deportation, in violation of 8 U.S.C. § 1326(a). United States v. Cross, CR 103-089 (S.D. Ga. Dec. 22, 2003) *(hereinafter* "CR 103-089"). As part of the negotiations for the Agreement covering both criminal cases, Petitioner agreed to waive indictment on the illegal re-entry charge and plead guilty to the conspiracy charge from the indictment at the same time he pleaded guilty to the illegal re-entry charge brought by information. CR 103-064, doc. no. 112, Sent. Tr., p. 8; doc. no. 164, Ex. 1, Rule 11 Tr., p. 2;[2] CR 103-089, doc. no. 5,

---

[1]Petitioner acknowledges that he "attempted to conceal his true identity at the time of his arrest and also following his arrest by defacing his fingerprints to prevent accurate fingerprinting by authorities. Petitioner also provided authorities with false names resulting in his indictment under alias names Walter Goins and Jesus Jose Sa[rav]ia." (Doc. no. 2, p. 2).

[2]In reviewing the docket in this case and Petitioner's underlying criminal cases, the Court noted a difference between the government's recitation of the Rule 11 Transcript (doc. no. 4, pp. 7-8) and the Rule 11 Transcript filed by the court reporter (CR 103-64, doc. no.

p. 1. Notably, the Agreement contained a provision whereby Petitioner "expressly waives any and all rights to collateral post-conviction attack of the sentence imposed or the voluntariness, providence, or factual basis of the guilty plea entered pursuant to this agreement." CR 103-089, doc. no. 5, p. 2. The Agreement did preserve Petitioner's "right to file a direct appeal (but not a collateral attack) of the sentence imposed (but not the voluntariness, providence or factual basis of [Petitioner's] entry of a guilty plea pursuant to this [A]greement,)" if Judge Bowen upwardly departed from the United States Sentencing Guidelines range. Id.

In preparation for sentencing, the United States Probation Office prepared a Pre-Sentence Investigation Report ("PSI"). One report was prepared to cover both cases in which Petitioner pleaded guilty. The PSI noted in three different paragraphs that Petitioner had been deported from the United States in 1999. PSI ¶¶ 17, 41, 45. The PSI set the Sentencing Guidelines range for imprisonment at 78 to 97 months. PSI ¶ 60. Petitioner's only objections to the PSI were to paragraphs 20 and 36 concerning a reduction for acceptance of responsibility. On April 15, 2004, Judge Bowen sentenced Petitioner to 84 months of

135). In the version of the transcript on file in the underlying criminal proceedings, the relevant portion of the guilty plea concerning Petitioner was omitted. (Id.). Thus, the Court directed the government to file a copy of the Rule 11 Transcript. (Doc. no. 6). The copy of the transcript provided by the government, certified by the same court reporter, contains the relevant pages that pertain to Petitioner. (Doc. no. 7, Ex. 1). There is no obvious explanation for the discrepancy; as the other pages are substantially similar as between the two versions of the transcripts, the Court presumes that the court reporter simply inadvertently omitted pages from his filing with the Court. As the discrepancy centers simply on an omission of pages and not the substance of the proceedings, the Court declines Petitioner's request to forgo use of either transcript (see doc. no. 8, p. 2) and will use the transcript containing the information pertinent to Petitioner. Thus, when referencing the Rule 11 Transcript herein, the Court refers to the transcript filed by the government on December 8, 2008.

imprisonment on the illegal re-entry charge in CR 103-089, to be served concurrently with 60 months of imprisonment on the conspiracy charge in CR 103-064.[3] CR 103-089, doc. no. 8; CR 103-064, doc. no. 104.

Despite the appeal waiver, Petitioner filed a direct appeal, raising three issues: (1) whether the sentencing court erred in enhancing his offense level for obstruction of justice; (2) whether the sentencing court erred in denying a reduction for acceptance of responsibility; and (3) whether the government breached its plea agreement in which it agreed to refrain from further criminal proceedings. United States v. Cross, No. 04-12150, slip op., p. 2 (11th Cir. Apr. 15, 2005); CR 103-089, doc. no. 18. Notably, different counsel represented Petitioner on appeal and at the trial court level. CR 103-089, doc. nos. 14, 17. The Eleventh Circuit affirmed. CR 103-089, doc. no. 18. The United States Supreme Court denied certiorari. CR 103-089, docket entry dated Oct. 13, 2006.

Petitioner then timely filed the above-captioned § 2255 motion, arguing that he received ineffective assistance of trial counsel. According to Petitioner, trial counsel was "ineffective for failing to advise Petitioner of his true defense to the charge of illegal re-entry," namely that Petitioner had been illegally deported because of problems with his deportation hearing. (Doc. no. 2, p. 3). Yet, in contradictory fashion, Petitioner also maintains that he informed his trial counsel of the facts of this defense and that he wanted to challenge the deportation element of the illegal re-entry charge. (Id.). Petitioner contends, however, that trial counsel stated that he was not that familiar with "immigration law" and

---

[3]Petitioner's sentence also included various terms of supervised release, special assessments, and fines.

4

that Petitioner should plead guilty to the illegal re-entry charge. (Id.). Petitioner "now realizes that he in fact was innocent of illegal re-entry," and thus he seeks relief from his conviction on that charge. (Id.). Additionally, despite contending on the one hand that he was "innocent of illegal re-entry," Petitioner has also submitted an affidavit in which he swears, "I am not challenging the factual bases of my plea, I am challenging the fact whether or not my guilty plea was entered in accordance with Rule 11 of the Federal Rules Of Criminal Procedure." (Doc. no. 5, Aff., ¶ 9).

The government requests that Petitioner be denied relief because of the waiver in the Agreement of Petitioner's right to file a collateral post-conviction attack on the sentence imposed or the voluntariness, providence, or factual basis of the guilty plea entered. (See generally doc. no. 4). In the alternative, the government argues that Petitioner's ineffective assistance of counsel claim fails on the merits. (Id.).

**B.    No Need for Evidentiary Hearing**

Petitioner requested an evidentiary hearing on his § 2255 motion. (Doc. no. 5, p. 8; doc. no. 9, p. 4). The Court recognizes that in the Eleventh Circuit, the general rule is "that effective assistance claims will not be addressed on direct appeal from a criminal conviction because an evidentiary hearing, available in a section 2255 proceeding, is often required for development of an adequate record." Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Nonetheless, this general rule does not require the Court to hold an evidentiary hearing every time an ineffective assistance of counsel claim is raised. Id. Stated another way:

> Notwithstanding this legislative mandate, it is well settled that a petitioner
> does not establish his right to a hearing by the simple expedient of filing a

5

petition. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.

Stephens v. United States, 14 F. Supp.2d 1322, 1334 (N.D. Ga. 1998) (citation omitted).

As described in detail below, the Court finds that Petitioner's claim is barred from review or otherwise affirmatively contradicted by the record.[4] Thus, no evidentiary hearing is necessary in this case. Accordingly, Petitioner's requests for an evidentiary hearing should be **DENIED**.

## C.    Effect of Waiver Contained in the Agreement

### 1.    Knowing and Voluntary Nature of Waiver

A waiver of appeal[5] provision is enforceable if the waiver is knowing and voluntary. United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1350 (11th Cir. 1993). "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. If the

---

[4]Indeed, as discussed in detail below, Petitioner is unable to provide one consistent theory as to what information was allegedly provided by trial counsel. He also provides an affidavit undermining the entirety of his position that counsel mis-advised him as to a possible defense to the illegal re-entry charge in that he avers, "I am not challenging the factual basis of my plea." (Doc. no. 5, Aff., ¶ 9). Moreover, the issue of a discrepancy between Rule 11 transcripts has been addressed in note 2, *supra*, and, despite Petitioner's motion (see doc. no. 9), does not warrant a hearing.

[5]By "appeal," the Court here refers to the right to "appeal or contest, directly or collaterally, [a] sentence." United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993). Moreover, case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings. Id. at 1345; see also Vaca-Ortiz v. United States, 320 F. Supp.2d 1362, 1365-67 (N.D. Ga. 2004).

government meets this burden in the instant case, then Petitioner is bound by the waiver in his Agreement. See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (*per curiam*) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1146-47 (11th Cir. 1997).

Here, the Agreement that Petitioner signed contains a provision expressly waiving his rights to collateral post-conviction attack of his sentence or the voluntariness, providence, or factual basis for the guilty plea. CR 103-089, doc. no. 5, p. 2 ("The defendant, as part of this agreement and in consideration for the government's promises hereunder, also expressly waives any and all rights to collateral post-conviction attack of the sentence imposed or the voluntariness, providence, or factual basis of the guilty plea entered pursuant to this agreement."). Although there was an exception for filing a direct appeal, but not a collateral attack, of the sentence imposed, this exception excluded attacks on the voluntariness, providence, or factual basis of Petitioner's entry of a guilty plea pursuant to the Agreement. Id. Moreover, Petitioner acknowledged that he:

> had the services of an attorney the defendant believes to be competent . . . that the defendant and the defendant's attorney have discussed possible defense, if any, to the charges in the indictment . . . ; [that Petitioner] weighed the relative benefits of a trial by jury or by the Court versus a plea of guilty pursuant to this Agreement, and has entered this Agreement as a matter of . . . free and voluntary choice.

Id. at 7-8.[6] Both Petitioner and his attorney signed the Agreement verifying that they had

_____

[6]Judge Bowen also asked Petitioner at the Rule 11 hearing if he was "entirely satisfied with your lawyer[']s preparation and his . . . handling of your case?" Rule 11 Tr., p. 8. Petitioner answered in the affirmative. Id.

read the Agreement and that the terms of the Agreement accurately represented the terms of the plea agreement. Id. at 9–10.

Additionally, Judge Bowen specifically reviewed the waiver provisions of the Agreement during the Rule 11 proceedings, and Petitioner agreed that Judge Bowen's review was correct.

> JUDGE BOWEN: You have expressly waived any right to appeal or attack any sentence under any post conviction relief or habeas corpus petition. However, that waiver of the right to appeal applies only to a sentence that is within your guidelines range. So, if, for example, I sentenced you above the guideline range for some reason you would have your right to appeal back.
>
> . . .
>
> Mr. Cross, have I correctly summarized your plea agreement?
>
> PETITIONER: Yes, sir, Your Honor.
>
> JUDGE BOWEN: Do you have any question about it?
>
> PETITIONER: No.

Rule 11 Tr., p. 23. Additionally, at the sentencing hearing, Judge Bowen again reiterated, without receiving any objection, that Petitioner had waived any right of appeal. Sentencing Tr., p. 19.

The record clearly supports the conclusion that the Agreement Petitioner signed fully set forth the condition that he was waiving any right to pursue a collateral attack of his sentence or the voluntariness, providence, or factual basis of the guilty plea. Judge Bowen repeatedly reviewed the waiver provisions at the Rule 11 hearing and at sentencing, and Petitioner affirmed that he understood and agreed with the terms of the Agreement as

8

explained by Judge Bowen. "Solemn declarations in open court carry a strong presumption of verity," and Petitioner's sworn statements before Judge Bowen are a "formidable barrier" for him to overcome in these collateral proceedings. Blackledge v. Allison, 431 U.S. 63, 74 (1977). Importantly, Petitioner never even suggests in his § 2255 motion that he did not understand or comprehend the waiver provision of the Agreement. Thus, the Court concludes that the waiver is valid, and, Petitioner is bound by its terms.

### 2. Ineffective Assistance of Counsel Claims Not Covered by Waiver

Despite the Court's finding of a valid waiver, under certain circumstances, ineffective assistance of counsel claims may survive a valid waiver. In particular, the Eleventh Circuit recognizes that "there may be a distinction between a § 2255 claim of ineffective assistance in entering or negotiating the plea versus a claim of ineffectiveness at sentencing or a claim challenging the validity of the plea or agreement." Williams v. United States, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005); see also Vaca-Ortiz, 320 F. Supp.2d at 1365 ("[T]he court notes that a criminal defendant could not waive the right to bring a claim for ineffective assistance of counsel in which he alleges ineffectiveness at the time he was entering the plea or ineffectiveness related to advice he received regarding the waiver.").

The government argues that the analysis need not proceed beyond the Court's finding of a valid waiver because although Petitioner has couched his argument in terms of ineffective assistance of counsel, he is actually trying to "mount a collateral challenge to his deportation order on the ground that he was denied due process at his January 31, 199[5], deportation hearing." (Doc. no. 4, p. 4). According to the government's interpretation of Petitioner's argument, he is trying to show that he was illegally deported so that he can then

9

challenge the factual basis of his current illegal re-entry conviction on the ground that he is actually innocent of the offense - a claim which, as discussed above, is barred by the waiver in the Agreement.

Petitioner ostensibly responded with an "opposition" to the government's take on his argument, but unfortunately for him, his "opposition" simply reinforces the government's position. Petitioner submitted a sworn affidavit in which he concedes that he "voluntarily entered a plea agreement with the United States District Attorney whereby I agreed to plea guilty to a one count Information charging me with illegal re-entry of a deported alien . . ."[7] (Doc. no. 5, Aff., ¶ 2). However, he also claims that prior to entering his guilty plea, he had a discussion with his attorney "on how to pursue the matter of illegal re-entry." (Id. ¶ 3). In particular, Petitioner claims that he outlined for his attorney how he believed that he did not have an adequate opportunity to obtain an affidavit from his father concerning the father's United States citizenship, which in turn, would have had an impact on Petitioner's deportation proceedings; Petitioner goes on to aver that he told his trial counsel that his father was an American citizen, as well as where to find his father so that the father could help Petitioner challenge a deportation proceeding that occurred approximately nine years prior. (Id.). Petitioner claims that his trial attorney told him that the facts of his deportation had no bearing on the current charge of illegal re-entry, and that in counsel's opinion, Petitioner "was guilty [of illegal re-entry] the day I was found in the United States after the prior deportation." (Id. ¶ 5). Notably, this statement in Petitioner's affidavit that counsel

_____

[7]Petitioner also stated in his initial briefing that he "voluntarily" entered into a plea agreement with the government. (Doc. no. 2, p. 2).

unequivocally told Petitioner that the facts of his deportation had no bearing on his current criminal charges is in contrast to Petitioner's initial briefing, in which he stated that his counsel "informed [him] that he wasn't that familiar with Immigration law." (Doc. no. 2, p. 3). Even though Petitioner maintains that he gave the above-noted roadmap to his trial counsel "on how to pursue the matter of illegal re-entry," he also asserts that only after his sentencing and incarceration did he supposedly learn that he actually had a defense to the illegal re-entry charge because he was allegedly illegally deported. (Aff., ¶ 7).

Continuing on with his contradictory positions, Petitioner then specifically avers that he is "not challenging the factual bases of my plea, I am challenging the fact whether or not by guilty plea was entered in accordance with Rule 11 of the Federal Rules of Criminal Procedure[]."[8] (Id. ¶ 9). Of course, if Petitioner is not challenging the factual basis for his plea, then there is no challenge to the sworn statements before Judge Bowen at the Rule 11 proceedings that he is in fact guilty of illegal re-entry, regardless of what may or may not have transpired at his 1995 deportation hearing.[9] Moreover, as discussed herein, Judge

---

[8]Petitioner has made absolutely no showing that Judge Bowen failed to satisfy the three "core objectives" of Rule 11. See United States v. Monroe, 353 F.3d 1346, 1354 (11th Cir. 2003) (explaining that Rule 11 challenges must establish that a defendant's rights were substantially affected and analyzing such challenges against three core objectives: "(1) ensuring that the guilty plea is free of coercion; (2) ensuring that the defendant understands the nature of the charges against him; and (3) ensuring that the defendant is aware of the direct consequences of the guilty plea." Id. (citation omitted)). To the contrary, the Rule 11 Transcript verifies that Judge Bowen covered all of these objectives in detail.

[9]The Court notes that when Special Agent Randy Beach ("SA Beach"), Bureau of Alcohol, Tobacco, Firearms and Explosives, gave the factual basis for the charges to which Petitioner pleaded guilty, he specifically explained the process of determining Petitioner's identity and the basis for determining that Petitioner had illegally re-entered the United States after having been deported. Rule 11 Tr., pp. 34-35. When Judge Bowen asked if Petitioner had any disagreement with SA Beach's testimony, the only issue Petitioner raised dealt with

Bowen thoroughly reviewed the Agreement and its ramifications with Petitioner at the Rule 11 hearing. Nevertheless, in an abundance of caution, the Court will consider Petitioner's claim as one of ineffective assistance of counsel as to the advice he received about entering into the Agreement.[10]

To establish ineffective assistance of counsel, Petitioner must meet a two-part test. Petitioner first must show that "counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). In applying this test, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance[.]" Id. at 689; see also Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing "that petitioner was not entitled to error-free representation"). "A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Second, Petitioner must

---

whether a fight or scuffle occurred at the time of Petitioner's arrest; there was no mention of Petitioner's prior deportation. Id. at 38-40.

[10]Here, the Court also notes that Petitioner was represented by different counsel at the trial and appellate levels. Thus, there is an argument to be made that Petitioner could have made his claim that he received ineffective assistance of trial counsel when deciding whether to enter a guilty plea on his direct appeal. "Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding." Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." Id. (citations omitted)). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Mills, 36 F.3d at 1055. However, despite these restrictions on raising previously available challenges, ineffective assistance of counsel claims may be raised for the first time in collateral proceedings. Massaro v. United States, 538 U.S. 500, 509 (2003). Thus, the Court will proceed with its analysis of Petitioner's ineffective assistance of counsel claim.

establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In the context of a guilty plea, the Court must normally inquire as to whether counsel's performance affected the outcome of the plea process. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In applying the Strickland components outlined above, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985) (citation omitted). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. (citing Strickland, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion -- though the presumption is not insurmountable - - is a heavy one." Fugate v.

Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511. The Court is also mindful that in the context of plea agreements, the Eleventh Circuit has commented that "[t]he right to competent plea bargain advice is at best a privilege that confers no certain benefit" in that a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (*per curiam*).

Here, Petitioner argues that his counsel "was ineffective for failing to properly advise him of a true defense." (Doc. no. 5, p. 4). Thus, goes the argument, Petitioner was deprived of "an informed choice" as to whether to plead guilty. (Id.). As the record does not show that Petitioner can satisfy the two-part Strickland test outlined above, this allegation fails to establish that Petitioner received constitutionally ineffective assistance of counsel.

First, Judge Bowen specifically informed Petitioner that by entering a guilty plea, he was giving up the right to put the government to its burden of proof. Rule 11 Tr., pp. 8-11. Judge Bowen also asked Petitioner, more than once, if he had enough time to properly discuss and prepare with his attorney, and both times Petitioner answered affirmatively. Id. at 7-8, 12. When Judge Bowen asked if Petitioner was "entirely satisfied" with his attorney's preparation and handling of his case, Petitioner never mentioned that he had any problems with his counsel's understanding, or alleged lack of understanding, of "immigration law."

14

Id. at 8. Moreover, when he signed the Agreement, Petitioner acknowledged that he had discussed possible defenses with his attorney and that he was giving up any possible defenses to the charged offense. CR103-089, doc. no. 5, pp. 7, 8. As noted above, these "solemn declarations" before Judge Bowen "carry a strong presumption of verity" and are a "formidable barrier" for Petitioner to overcome in these collateral proceedings. Blackledge, 431 U.S. at 74.

Belated, contradictory arguments from Petitioner about what information was allegedly provided by trial counsel about possible defenses to the illegal re-entry charge prior to the entry of his guilty plea are not sufficient to show that he received constitutionally ineffective assistance of counsel.[11] The record confirms that Petitioner knew, prior to entering his guilty plea before Judge Bowen, that he was giving up his right to put the government to its burden of proof. In exchange for the Agreement from the government, he was admitting the factual basis for his plea, namely that he illegally re-entered the United States after having been deported (CR 103-89, doc. no. 5, pp. 3-4) - - regardless of what may or may not have occurred at his 1995 deportation proceedings.[12] Indeed, Petitioner himself

---

[11]As noted above, in these collateral proceedings, Petitioner has alternatively argued that his counsel stated that he did not know that much about "immigration law" (doc. no. 2, p. 3) and that any problems with the 1995 deportation proceedings had no bearing on the criminal charges that were part of the Agreement (Aff., ¶ 5). Petitioner offers no explanation as to why, if his counsel told him that he did not know that much about "immigration law," he chose to accept counsel's determination that the 1995 deportation proceedings had no bearing on the illegal re-entry charges without notifying Judge Bowen, when (twice) specifically asked (Rule 11 Tr., pp. 8, 12), that there was a question about counsel's preparation or handling of the case.

[12]The Court also notes that Petitioner cites United States v. Mendoza-Lopez, 481 U.S. 828, 838-39 (1987), as the case he discovered after his imprisonment to support his current argument that he could have, if counsel had properly advised him, challenged an allegedly

avers in the affidavit submitted in support of his § 2255 motion that he is "not challenging the factual bases of my plea." (Aff., ¶ 9).

Lastly, as the Supreme Court explained in <u>Hill</u>, *supra*, Petitioner's allegations are insufficient to satisfy the "prejudice" prong of the two-part test for ineffective assistance of counsel. Although in hindsight Petitioner now makes the unsworn statement that he would not have pleaded guilty if he had been advised properly (doc. no. 5, p. 7), Petitioner's current arguments fail to acknowledge that his guilty plea on the illegal re-entry was part and parcel of the Agreement that also covered the conspiracy charge. Stated otherwise, Petitioner does not allege that he would have given up the benefit of the entire Agreement for both cases to challenge a deportation hearing - a challenge that may or may not have provided a defense to the illegal re-entry charge. <u>See</u> <u>Hill</u>, 474 U.S. at 60. Nor has Petitioner alleged special circumstances that might support the conclusion that he placed particular emphasis on the illegal re-entry charge over the charge concerning a conspiracy to produce fraudulent identification documents. <u>See</u> <u>id.</u> In fact, nowhere does Petitioner mention, let alone explain, any particular emphasis he may have placed on one charge over the other in deciding

---

improper deportation proceeding in his criminal case charging him with illegal re-entry. (Aff., ¶ 8). Interestingly, however, the Supreme Court's ruling in <u>Mendoza-Lopez</u> that "review be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense," 481 U.S. at 839, had been addressed by Congress and incorporated in 1996 into the statute under which Petitioner was charged for illegal re-entry in 2003. <u>See</u> 8 U.S.C. § 1326(d); Pub. L. 104-132 § 441 (1996). Judge Bowen explained the charge to Petitioner, and Petitioner stated that he understood the charge and had no question about what the government would have to prove to obtain a conviction. Rule 11 Tr., pp. 20-21. Thus, regardless of what counsel may have known about a body of law to which Petitioner refers as "immigration law," the very statute under which Petitioner was charged laid out the circumstances under which an alien could challenge an underlying deportation order, including that "the entry of the [deportation] order was fundamentally unfair." 8 U.S.C. § 1326(d)(3).

to plead guilty to two separate charges, from two separate cases, by way of the same Agreement.[13] In any event, as noted above, Judge Bowen specifically informed Petitioner of his right to put the government to its burden of proof; Petitioner never once gave any indication that he had any issue with counsel's understanding and/or advice on "immigration law" such that Petitioner had any question about whether he wanted to proceed with his guilty plea on the conspiracy and illegal re-entry charges.

In sum, Petitioner's belated allegations about what occurred at his deportation proceedings, what kind of documentation he may have been able to produce concerning his father's citizenship, and what his counsel told him about the impact of any potential irregularities in those deportation proceedings had on his pending criminal charges cannot now form a valid basis for an ineffective assistance of counsel claim in these collateral proceedings.[14] Judge Bowen gave Petitioner ample opportunity to raise any of these issues prior to the entry of the guilty plea. Petitioner has identified no reason to conclude that he

---

[13]Indeed, according to the penalty certification in CR 103-064, Petitioner faced a statutory sentence of up to five years of imprisonment for the conspiracy charge, and the five counts of producing a fraudulent identification document carried the possibility of a statutory sentence of up to fifteen years of imprisonment. CR 103-064, doc. no. 17. The statutory penalty for the illegal re-entry charge was up to twenty years of imprisonment. CR 103-089, doc. no. 2. In deciding to proceed with the joint guilty plea in both cases, Petitioner was able to remove the possibility of a trial on multiple charges that carried the potential for multiple terms of imprisonment and received a total sentence of imprisonment of seven years. As Petitioner received a concurrent sentence of five years of imprisonment on the conspiracy charge, in practical terms Petitioner's counsel helped him to achieve a sentence amounting to two additional years of imprisonment for the illegal re-entry charge when, had Petitioner gone to trial, he faced a statutory sentence of up to twenty years on that charge.

[14]The Court also notes that despite Petitioner's assertions about what kind of documentation could have been produced concerning his father's citizenship, there is no evidence submitted with the § 2255 motion to substantiate his claims as to his father's citizenship, let alone his willingness to become involved with Petitioner's immigration issues.

did not enter into his guilty plea, with its waiver of his rights to pursue a collateral attack, both knowingly and voluntarily. There are no claims that Petitioner did not understand the Agreement or the court proceedings, and his belated claims that counsel provided constitutionally ineffective assistance concerning the decision to plead guilty are without merit. In sum, Petitioner's § 2255 motion should be denied without an evidentiary hearing.

## II. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Petitioner's § 2255 motion be **DENIED** without an evidentiary hearing, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the government.

SO REPORTED and RECOMMENDED on this _8th_ day of January, 2009, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE